## EARL LEWIS STEWARD, Appellant, v. THE STATE OF NEVADA, Respondent.

No. 4155

December 1, 1959            346 P.2d 1083

*Keith Williams*, of Elko, for Appellant.

*Roger D. Foley*, Attorney General, *Joseph O. McDaniel*, District Attorney, of Elko, for Respondent.

# OPINION

By the Court, McNamee, C. J.:

Appellant was convicted of first degree murder. The jury by its verdict fixed the penalty at death. Appeal is taken from the judgment and order denying appellant's motion for a new trial.

The only question raised on appeal is whether the trial court over the objection of appellant erred in permitting the jury to view a truck and the inside thereof outside the courtroom and without the presence of defendant and his counsel.[1] It was not the same truck that the victim had been killed in but according to the evidence it was one identical therewith. The view was not had at the premises where the crime, or where any material fact connected therewith, occurred.

NRS 175.315 provides:

"When, in the opinion of the court, it is proper that the jury should view the place in which the offense is charged to have been committed, or in which any other material fact occurred, it may order the jury to be conducted in a body, in the custody of an officer, to the place, which must be shown to them by a person appointed by the court for that purpose; and the officer must be sworn to suffer no person to speak or communicate with the jury, nor to do so himself on any subject connected with the trial, and to return them into court without unnecessary delay, or at a specified time."

The homicide admittedly took place in the cab of the victim's truck. Defendant, in his written statement in evidence, detailed the events leading up to his shooting of the victim and described their relative positions in the truck and cab. Photographs were received in evidence showing both the inside and outside of the truck and cab. To have permitted a view of the actual truck and cab where the encounter took place would not have

---

[1]Defendant's objection was based on the grounds that the view would amount to the taking of evidence out of court, and that the view was not of the place where the alleged offense was committed. No question was presented to the trial court of the right of the defendant to be present during the view.

been violative of the statute under these circumstances. It would have been a view of the scene of the alleged offense and in this sense it would have been "the place in which the offense is charged to have been committed."

The fact that the "place" consists of a vehicle would not circumvent the statute. Sweeney v. Willette, 98 N.H. 512, 104 A.2d 398; State v. Cates, 97 Mont. 173, 33 P.2d 578; State v. Smith, 62 Ariz. 145, 155 P.2d 622. Accord: Howe v. State, 85 Okl.Cr. 22, 185 P.2d 481.

"* * * the process of view need not be applicable merely where land is to be observed; it is applicable to any kind of object, real or personal in nature, which must be visited in order to be properly understood." IV Wigmore on Evidence (3d Ed.), sec. 1163, p. 270.

What would have been seen by the jury would not be evidence as such and is not intended so to be. The purpose of the view would be to enable the jury better to understand evidence which has been or may be introduced. State v. Hartley, 22 Nev. 342, 40 P. 372, 28 L.R.A. 33.

Since we have concluded that a view of the actual vehicle in which an offense is charged to have been committed would have been proper under the circumstances, we can see nothing prejudicial to the defendant in permitting the jury to view an identical vehicle as was done in this case. 1931 Rouse's Trial, (Notable British Trials Series, p. 257; murder by burning the deceased in an abandoned motor car; the jury was allowed to inspect a car of identical model). In fact it would appear that the view would tend to be beneficial to the defendant as it enabled the jury to understand and more fully appreciate the written statement of the defendant, already in evidence, pertaining to his conception of what had taken place in the cab, and it made clearer and more understandable defendant's oral corroborating testimony that followed.

Defendant has urged that the trial court in permitting

the view deprived him of certain constitutional rights and privileges, the nature of which are considered at length in State v. Merritt, 66 Nev. 380, 212 P.2d 706. The present case is clearly distinguishable.

In the Merritt case we concluded that the "view" there permitted involved primarily the taking of evidence out of court and the defendant was thereby deprived of his constitutional rights of confrontation and cross-examination. That situation does not here exist. From a practical point of view some evidence would naturally be perceived by the jury, but any such evidence would be merely incidental to the view, and as aforesaid it was not prejudicial to the defendant. Under these circumstances the defendant's constitutional rights and privileges have not been impaired. The words of Justice Cardoza writing for the majority of the court in Snyder v. Commonwealth of Massachusetts, 291 U.S. 97, 54 S.Ct. 330, 338, 78 L.Ed. 674, are of especial significance with respect to this particular matter:

"Privileges so fundamental as to be inherent in every concept of a fair trial that could be acceptable to the thought of reasonable men will be kept inviolate and inviolable, however crushing may be the pressure of incriminating proof. But justice, though due to the accused, is due to the accuser also. The concept of fairness must not be strained till it is narrowed to a filament. We are to keep the balance true.

"The constitution and statutes and judicial decisions of the Commonwealth of Massachusetts are the authentic forms through which the sense of justice of the People of that Commonwealth expresses itself in law. We are not to supersede them on the ground that they deny the essentials of a trial because opinions may differ as to their policy or fairness. Not all the precepts of conduct precious to the hearts of many of us are immutable principles of justice, acknowledged *semper ubique et ab omnibus* (Otis v. Parker, 187 U.S. 606, 609, 23 S.Ct. 168, 47 L.Ed. 323, 327), wherever the good life is a subject of concern. There is danger that the criminal law will be brought into contempt—that discredit will

even touch the great immunities assured by the Fourteenth Amendment—if gossamer possibilities of prejudice to a defendant are to nullify a sentence pronounced by a court of competent jurisdiction in obedience to local law, and set the guilty free."

We are not unmindful that in the Merritt case the court in considering the type of view permissible under our statute used certain language which appears to be in conflict with our views herein expressed. Such language was unnecessary for the conclusion therein reached and consequently we do not consider such statements as governing authority.

The legislature of this state has ordained that this court shall on appeal give judgment without regard to technical error or defect which does not affect the substantial rights of the parties. NRS 177.230.

No prejudicial error appearing, the judgment and order denying a new trial are affirmed, and the district court is directed to make the proper order for carrying into effect, by the warden of the state prison, the judgment.

BADT and PIKE, JJ., concur.